734 So.2d 152 (1999)
June CALDERONE
v.
DORIGNAC'S FOOD CENTER, INC.
No. 99-CA-3.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 1999.
Clark Richard, Metairie, LA, for Plaintiffs-Appellants.
Eric J. Halverson, Jr., Metairie, LA, for Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
This is an appeal by June Calderone and her son Keith, plaintiffs-appellants, from an adverse jury verdict in their slip and fall suit against Dorignac's Food Center, Inc., and its insurer, Argonaut Great Central Insurance Co., defendants-appellees. Because we find no manifest error in the factual determinations made by the jury, we must affirm the judgment.
The facts of the occurrence are for the most part undisputed. On the day of the accident Mrs. Calderone, a 72 year old widow, went to Dorignac's supermarket for some cranberry juice. She had shopped at this store for some twenty years and frequently bought cranberry juice, and thus knew exactly where this product was shelved. She entered the store and proceeded the wrong way through a closed but unblocked check-out aisle, a route regularly used by shoppers with the knowledge of the store managers. She cleared the check-out counter and then apparently turned slightly to her right toward where the juices were to be found. At that point her right leg struck the corner of a grocery stocking cart and she fell, breaking her hip. This injury required surgery, and in the aftermath she is apparently no longer capable of caring for herself. As a consequence, her son Keith has had to take her into his home.
Suit was brought against the supermarket and its insurer, and the matter was tried to a jury. The jury interrogatory form pertinently asked "Whether the condition which caused Ms. Calderone's injury presented an unreasonable risk of harm to the claimant (plaintiff)." The jury answered "No," and judgment for defendants was entered accordingly. Plaintiffs urged a motion for judgment notwithstanding the verdict or alternatively for a new trial, but both prayers for relief were denied by the trial judge. They now appeal.
Pursuant to La R.S. 9:2800.6, when a claim is brought against a merchant because of a fall due to a condition on the *153 premises, the plaintiff bears the burden of proving all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
Failure to prove any one of these factors is fatal to plaintiff's case.
In Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, the court held directly that the proper standard of review of a fact finder's determination of the question of whether a condition presents an unreasonable risk of harm is that of manifest error. In the present matter, the jury determined that the condition on the premises, i.e. the location of the stocking cart, did not present an unreasonable risk of harm to plaintiff. In this court, the question is thus whether this determination is manifestly erroneous or clearly wrong. In Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993), the court noted that this test is not whether the appellate court might have made different findings than the trier of fact, or even whether the trier of fact's findings were right or wrong, but rather whether the findings were reasonable in light of the record reviewed in its entirety. It went on to say that where there is conflicting evidence, reasonable credibility determinations and inferences of fact should not be disturbed on appeal.
The basic factual issues in the case before us concern whether the location of the stocking cart was a condition which presented an unreasonable risk of harm to plaintiff. As briefly mentioned above, plaintiff entered the store by going the opposite way through a check-out aisle and tripped when her right leg struck the corner of a stocking cart on the merchandise side of the check-out counter. A number of photographs were introduced which showed the scene clearly. The check-out equipment was typical for a supermarket. Coming from plaintiff's direction and to her right side would have been first the bagging area, then the scanner counter (with the cashier's standing area and cash register further over), followed by the conveyor belt portion of the counter. There was also a merchandise display rack which was higher than, and ran parallel to and along the far side of the conveyor belt counter, and stuck out into the store several feet beyond the end of that counter.
The stocking cart at issue was made of tubular chrome-colored metal about one and one-half inches in diameter. The base consisted of a rectangle of this tubing approximately four feet long and eighteen inches wide with smooth rounded corners. Five additional lengths of tubing, evenly spaced, ran from the front to the rear of the rectangle. It was supported by a wheel at each corner and the top of the base was about six inches above the floor. On the rear end there was an upright handle in the shape of a square cornered inverted "U" which was about three feet high.
All witnesses agreed that this cart was placed at the end of the check-out counter in the "L" shaped space formed by the end of the counter and the protruding display rack, with the handle end toward the counter. There was some conflicting testimony, however, as to its exact position vis-avis the counter.
Mark Gardner, the warehouse manager, testified that on the day of the accident he was using the cart to stock groceries. He said that the store probably has over twenty-five of the carts which are used to bring boxes of groceries from the warehouse into the store for stocking the shelves, and it *154 was otherwise shown that this work goes on constantly while the store is open. He explained that as he emptied these cardboard boxes of merchandise he broke them down and put them in a regular shopping cart which he had on hand. When the stocking cart was empty he put it up against the conveyer counter where he deemed it to be out of the way and took the shopping cart of empty boxes out to the trash compactor.
His testimony was that the handle end of the cart was square with, and up tight against, the end of the conveyor counter with the long axis of the base in line with the long axis of the counter. Photographs of this configuration showed the right edge of the cart's base as being up against the display rack which extended out from the back edge of the counter. They also showed that the cart was about one-half as wide as the conveyor counter, and that the top of the handle was clearly visible over the counter when viewing it from a distance coming through the check-out aisle. One photograph also showed that as one walked through the aisle, the far end of the cart's base came into view over the conveyor before reaching the end of the conveyor counter. Of course, once the end of the conveyor counter was reached, the entire cart was in plain view, and the corner upon which plaintiff tripped was another four feet further out.
Plaintiff attempted to show that although the cart was in the area indicated by Gardner, it was not straight out from the end of the conveyor, but was rather at an angle, with the far left corner of the base sticking out into the aisle. Plaintiff did not testify as to the exact position of the cart, and apparently did not see it before falling. She indicated, however, that she was going to her right to the juice section when she tripped. William Finnigan, a Pepsi Cola sales representative, testified that he was entering the store through the same aisle as plaintiff, and was a few steps behind her. His recollection of whether the cart was straight or at an angle was ambiguous at best. He was also unsure of whether plaintiffs path turned to the right as she cleared the conveyer counter, but said that he was familiar with the store and knew that the juice section was to the right of where plaintiff entered. He did see her hit the cart and fall, however, further said that at that moment he was about even with the cash register and from that vantage point he could see the front end of the base of the cart.
Fred Little, the manager of the store, said that to his recollection the cart was at an angle by the time he arrived on the scene, but further said that in his opinion even were it at an angle there was nothing dangerous about that position. Michael Marchand, the assistant manager, placed the cart at an angle in deposition, but was unsure of this point at trial.
On the above evidence, the jury determined that the position of the cart did not present an unreasonable risk of harm to plaintiff. It is evident from this ultimate finding that the jury must have found either that the cart was not protruding into the aisle or, even if it was, that it was in plain view and should have been seen by anyone walking through the check-out aisle in time to avoid stumbling over it.
The question for this court is whether this factual conclusion was a manifestly erroneous one, or a reasonable one, considering the entire record and taking into account credibility determinations and reasonable inferences drawn from the evidence. In our opinion, it was reasonable. As discussed above, a reasonable view of the evidence could establish that the cart was straight vis-a-vis the counter, and was in plain view to anyone walking through the aisle, at least by the time they approached the end of the conveyor belt counter. Moreover, once at the end of that counter the entire cart would have been visible. Further, reasonable inferences were that plaintiffs path inclined to the right as she cleared the check-out counter and that she simply did not look to *155 see if anything was in her path at that point. Because we discern no manifest error in these findings and inferences, or in the ultimate conclusion that the position of the cart did not present an unreasonable risk of harm to claimant, we must affirm the decision of the jury.
For the foregoing reasons, the judgment in favor of the defendants is hereby affirmed.
AFFIRMED.